PHILIP I. MARVEL, respondent,

*v.*

NETTIE FRALINGER et al., appellants.

[Argued July 7th and 8th, 1904. Decided October 6th, 1905.]

1. Where a complainant, by his bill, prays for an answer without oath, and at the same time in the body of his bill addresses to the defendant certain interrogatories, which the defendant answers under oath, such answers have not the effect either of a sworn answer to the complainant's bill or of answers to interrogatories annexed to the bill and propounded under the statute; at most, such answers, as to matters of fact so sworn to, constitute an *ex parte* affidavit, which, if read without objection, may be treated as evidence in the cause.

2. Upon a bill filed for the specific performance of a contract to convey land, a decree that the defendant convey, at a specified price, will be reversed if unsupported by competent proof of an agreement to that effect made by the defendant.

On appeal from a decree of the court of chancery, entered upon the recommendation of Vice-Chancellor Reed, whose opinion is reported in *65 N. J. Eq. (20 Dick.) 161.*

Four persons, to wit, the complainant, the defendant, John L. Young and Stewart R. McShea, were the owners, as tenants in common, in equal shares of a tract of land in Atlantic City, upon which there was a mortgage of $43,000. Negotiations between the complainant and the other tenants in common for the purchase by him of their three-fourths interest resulted in a written agreement under which Young and McShea appear to have conveyed their interest to the complainant. The defendant having refused to convey her interest for the sum tendered to her by the complainant, the present suit for specific performance was instituted against her, in which the substantial dispute is whether the defendant had agreed to convey her one-third interest for one-third of the cash consideration mentioned in said agreement, less one-fourth of the said $43,000 mortgage.

The decree of the court of chancery was to the effect that she had so agreed; from this decree the defendant has appealed.

*Mr. Edmund B. Leaming,* for the appellants.

*Mr. Clarence L. Cole,* for the respondent.

The opinion of the court was delivered by

GARRISON, J.

On November 3d, 1899, Philip I. Marvel filed his original bill of complaint against Nettie Fralinger for the purpose of compelling her to make a conveyance to him in specific performance of a written agreement touching the sale of land set forth in a schedule attached to the complainant's said bill. The agreement thus attached to the bill of complaint and sought

to be enforced was made by John L. Young and wife, Stewart R. McShea and wife, and Nettie Fralinger and husband, parties of the first part, as vendors, to Philip I. Marvel, party of the second part, as vendee, and contained, in addition to a description of the land and a promise by the vendors to convey their interest therein, a statement of the consideration to be paid therefor by the vendee, which was stated as "the sum of $182,250, and the further consideration of the party of the second part assuming and agreeing to pay a mortgage of $43,000 on the premises." This agreement was dated June 25th, 1899, and was signed by all the vendors. The bill of complaint alleged a tender by the complainant of the amount due to the defendant under the terms of this agreement and her refusal to convey.

On January 5th, 1900, the defendant answered, admitting the making of the said agreement as set forth in the bill of complaint, but denying that the complainant had tendered the amount due to the defendant under the terms of the said agreement, in that the complainant, instead of tendering one-third of the cash consideration provided by the said agreement, had tendered to her such sum, less one-fourth of the $43,000 mortgage mentioned therein, whereas the defendant averred that the said agreement provided that the assumption of said mortgage should be in addition to the said cash consideration, not that it should be deducted from it.

Two years and six months after the filing of this answer, to wit, on July 28th, 1902, the complainant exhibited an amended bill of complaint against the defendant to compel her to make a conveyance to him in specific performance of two writings annexed to such amended bill, the first of which (called *Exhibit A*) was the agreement already described as attached to complainant's original bill, the second (called *Exhibit B*) being as follows:

### "EXHIBIT B.

"Whereas, a certain agreement has been made for the sale of lands located in Atlantic City, New Jersey, between Massachusetts avenue and Connecticut avenue, adjoining the boardwalk, which bears date August 25th, 1899, between Stewart R. McShea and wife, John L. Young and wife, and Nettie Fralinger and husband, of the one part, and Philip I. Marvel, of the other part, as by reference to said agreement will more fully appear:

"And Whereas, the said agreement, as by the terms thereof, fixes the consideration to be paid for the interests of the parties of the first part in said land at the sum of one hundred and eighty-two thousand two hundred and fifty dollars;

"And Whereas, the parties of the first part to the said agreement have given a receipt to said Philip I. Marvel for the sum of thirty-two thousand two hundred and fifty dollars, which sum of money has not in fact been paid to the said parties of the second part, but was given in acknowledgment for the services rendered, according as agreed and as a benefit to said Marvel, whereas only ten thousand dollars was paid at the time of the signing of the second agreement;

"Now this agreement witnesseth, that the true consideration for the transfer of said property is the sum of one hundred and fifty thousand dollars, and not the said sum of one hundred and eighty-two thousand two hundred and fifty dollars, as stated in said agreement, and that upon the settlement, under the terms of said agreement, only the sum of one hundred and fifty thousand dollars, less the mortgage, is to be paid.

"In witness whereof, we have hereunto set our hands and seals this twenty-fifth day of August, A. D. eighteen hundred and ninety-nine."

[L. S.]
[L. S.]
[L. S.]
[L. S.]
[L. S.]
[L. S.]

To this amended bill the defendant answered that *Exhibit B* had never been signed by her and that there was no mistake in *Exhibit A* as to the statement of the consideration therein contained. The defendant's answer also set up as new matter a further agreement, in writing, dated August 25th, 1899, and signed by all of the vendors, in which the consideration was stated to be "the sum of $150,000 and the further consideration of the vendee assuming and agreeing to pay a mortgage of $43,000 on the premises," which the answer averred was the original and only agreement between the parties until it was superseded by *Exhibit A,* which, though dated as of June 25th, 1899, was in fact not executed until September 16th of that year. Inasmuch as the agreement of June 25th, 1899 (*Exhibit A*) and the agreement of August 25th, 1899 (defendant's exhibit), each called for the payment of the $43,000 mortgage, in addition to the cash consideration named in each agreement, while *Exhibit B* declared that said sum of $43,000 was to be deducted from the cash con-

sideration agreed to by the parties, it is evident that the point
at issue under the amended bill and answer was whether, by any
writing signed by the defendant, it was shown that she had
agreed to make a conveyance upon the payment to her of one-
third of the cash consideration named in the agreements, less
one-fourth of the sum of $43,000.

The complainant contends that *Exhibit B* so modified the
agreement contained in *Exhibit A* as to constitute such a promise.
The defendant denies the validity of this contention, while also
denying that *Exhibit B* was in fact ever signed by her.

In the opinion delivered in the court of chancery the atten-
tion of the learned vice-chancellor was mainly, if not wholly,
directed to the issue of fact so raised by the defendant, viz., that
she had not signed *Exhibit B.* The conclusion reached upon
the testimony was that *Exhibit B* had been signed by the defend-
ant, in which conclusion we concur. A question that troubled
the learned vice-chancellor, viz., whether the sworn answers of
the defendant to certain interrogatories did not throw upon the
complainant the burden of supporting his own testimony by
special corroboration, is not, it seems to us, in the case. The
complainant had prayed for an answer without oath, and in the
body of his bill had addressed certain interrogatories to the
defendant. These interrogatories, notwithstanding the prayer
of the bill, were answered by the defendant under oath. This
circumstance, however, could not impart to the answers so given
the effect either of a sworn answer to the complainant's bill or
of answers to interrogatories that had been annexed to the bill
of complaint and propounded under the statute; at most, such
answers, as to the matters of fact so sworn to, constituted an
*ex parte* affidavit, which, if read without objection, might be
treated as evidence in the cause.

The fact that the defendant signed *Exhibit B* being estab-
lished, a further question arises that does not appear to have
received much consideration in the court below, viz., whether
there is any competent proof of an agreement by the defend-
ant to convey to the complainant one-third of the premises
for one-third of the money consideration stated in *Exhibit
A,* less one-fourth of the $43,000 mortgage mentioned therein,

which was the decree of the court below. It is said that *Exhibit B,* having been signed by the defendant, affords such proof. *Exhibit B,* it is true, in making certain statements touching the meaning of *Exhibit A,* makes the statement that upon a settlement under its terms only the sum of $150,000, less the mortgage, is to be paid; but *Exhibit A,* it must be remembered, was an agreement by three persons to convey "an undivided three-fourths interest," and hence could not be altered in any material respect by the mere declaration of one of its signers. Moreover, *Exhibit A,* when tendered to the complainant, was, according to his own testimony, never accepted by him, and hence at the time *Exhibit B* was signed was non-existent as an agreement, and did not have such vitality imparted to it by the mere contradiction of its terms by one of its signers. Furthermore, *Exhibit B* shows on its face that it was intended to be the joint act of all the original signers of the agreement to which it referred, as obviously it must be if its terms were to be incorporated into such agreement, or if the terms of such agreement were to be incorporated into it. In fine, *Exhibit A* never was an agreement between the parties to it and did not become so by force of the signing of *Exhibit B* by the defendant; while *Exhibit B,* on the other hand, standing alone, was a mere declaration, and not an agreement at all; it contained no promise to convey; it was without consideration, and it imported no mutality of obligation; at most, it was the mere statement by the defendant that an unaccepted agreement of herself and two others meant exactly the opposite of what its makers, by signing it, had said that it meant. Upon such proof a court of equity should not decree an enforced conveyance of land.

The result of these considerations is that the decree of the court below, by which the defendant was obliged to accept in payment for her land one-third of the money valuation placed upon it by the parties to its sale, less one-fourth of the sum of $43,000, must be reversed because unsupported by any competent, *i. e.,* written, proof of any agreement to that effect made by the defendant or upon her behalf.

It will not be amiss to add that this result is entirely due to the complainant's intentional obscuration of the real agreement between himself and the other owners of the land. This is made clear by his own testimony. From this source it appears that early in the transaction by which he was to acquire sole ownership of the land the complainant had sold to one Humburg one-half of the property, at the rate of $243,000 for the whole; that is to say, $200,000, which was the valuation of the entire tract by its four owners, plus $43,000, which was represented by a mortgage, which, as between the owners, was to be deducted from the $200,000, so that three-fourths of this mortgage would be deducted from $150,000, which was three-fourths of the whole valuation, and not assumed in addition to it, as was made to appear by the written agreements upon which the complainant's bills were based. The persistent effort to keep up this latter fiction, in view of possible contingencies in the deal with Humburg, by swelling the apparent price paid by the complainant for the property to the extent of the $43,000 mortgage, while at the same time providing for a *modus* of settlement between the parties themselves upon the basis that the $43,000 mortgage was to be deducted from the consideration, resulted, not unnaturally, in the absence of any written evidence of the agreement which the complainant now seeks to enforce.

Whether the course pursued by the complainant with respect to the written agreements should not of itself have led the court of chancery to deny to him its aid for their enforcement has been duly considered, but inasmuch as the result will be the same it has been deemed best to decide the cause upon an issue presented by the pleadings of the parties, rather than upon a ground not so raised and upon which the complainant may urge that he has not been fully heard.

The decree of the court of chancery is reversed, and the complainant's bill directed to be dismissed.

*For affirmance*—PITNEY, BOGERT, VROOM, GREEN—4.

*For reversal*—THE CHIEF-JUSTICE, DIXON, GARRISON, FORT, SWAYZE, VREDENBURGH—6.